proceeding against the parties who originated it. Inasmuch as the Code does not specially provide who shall pay the costs on· the trial of the particular class of cases mentioned in the record, and the jury having found that the complaint of the parties was not well founded in point of fact, by returning a verdict for the defendant with costs of suit, it is but just and right, in our judgment, that the parties who originated and instituted the proceeding, should pay the cost of it.

Let the judgment of the Court below be affirmed.

---

137    *ROBERT M. CLARK, plaintiff in error, *v.* ROBERT H. McCROSKEY, defendant in error.

(Atlanta, June Term, 1870.)

LANDLORD AND TENANT—SCALING ORDINANCE—DESTRUCTION OF TENEMENT—ABATEMENT OF RENT.—A contract for rent, made in 1864, like any other contract, is subject to the Scaling Ordinance of 1865, and the rule laid down in Section 2267 the Code, that the destruction of the tenement by fire, or the loss of possession by any other causalty, not caused by the landlord, or from defect of his title, shall not abate the rent contracted to be paid, must be construed in connection. with the Scaling Ordinance, and subject under it to the right of the defendant, to give in evidence the consideration of the rent notes, and the value thereof at any time.

SAME—SAME—SAME—EVIDENCE OF VALUE OF PROPERTY AFTER DESTRUCTION.—As the tenement rented was destroyed by the Federal army, during the period for which it was rented, and as is the consideration of the rent notes, the defendant has the right to give in evidence its value, after the destruction, as well as at any other time, and the jury, upon the whole evidence, may adjust the equities between the parties. Warner, J., dissenting.

Landlord and Tenant. Scaling Ordinance. Before Judge Pope. Fulton Superior Court. November Term, 1869.

Clark sued McCroskey upon his promise to pay rent of a store-house in Atlanta, from the 2d of May till the 2d of December, 1864, at $1,000 00 per month. McCroskey pleaded that dollars in his promise meant Confederate currency which were then worth but four cents in the dollar, and contended that the demand should be scaled according to equity; that he had paid $1,000 00 in such currency on the 2d of May, 1864, and another $1,000 00 on the 2d of June, 1864, and that (on or about the 23d of July, 1864, he was compelled to abandon the occupancy of said premises, in consequence of the shelling of Atlanta by the Federal army, under General Sherman; that thenceforth up to the time of its destruction, he was unable, for the same reason, to occupy said property, and on or about the 14th of November, 1864, the same was burned by said army, by means whereof the value of said property for rent was almost if not entirely destroyed; and he

prayed that the equities between the parties be adjusted by the jury under the Ordinance of 1865.) Clark's attorney demurred to that part of the pleas contained in ( ). The demurrer was overruled.

*They introduced McCroskey's promise to pay for said rent $1,000 00 per month, as aforesaid; showed by a witness the character and situation of the house, that it would have rented for $150 00 per month in specie before the war, and would then rent for $200 00 per month in Greenbacks, and that others would have taken it in May, 1864, at $1,000 00 per month in Confederate currency. Plaintiff closed. McCroskey testified that he occupied said premises for two months and twenty days from the 2d of May, 1864; that about the 22d of July, 1864, some of General Wheeler's men entered the store, broke down the doors, and in a few days afterwards, by the shelling of the city by the Federal army, he was compelled to abandon the house; that for the same reason he was kept from occupying it until it was burnt up on the 14th of November, 1864, by said Federal army; that after the entrance of said army into Atlanta, better stores could be had for nothing, owners being anxious to have their premises occupied in order to preserve them; that his principal business was selling slaves, and the principal value of said store was in that it had a sort of jail in the rear to keep run-a-way slaves. Another witness testified to the same facts. The payment of the $2,000 00 in May and June in Confederate currency was shown. By consent, Barber & Son's table, showing the value of Confederate currency, was considered as in evidence.

The Court charged that there was a general rule of law that when real property was rented for a definite term, the tenant was liable to pay the rent even though the property should be destroyed or the tenant be deprived of the possession of the same, unless the destruction or loss of possession resulted from some act of the landlord, or from a defect in his title. There is, however, a certain class of contracts, commonly known as "Confederate contracts," being all those made between the 1st of June, 1861, and the 1st of June, 1865, with reference to which a special rule has been adopted, which rule is that either party, in any suit for the enforcement of any such contract, may, upon the trial, give in evidence the consideration and the value thereof at any time, *and the intention of the parties as to the currency in which payment was to be made, and the value of such currency at any time, and from all the evidence thus submitted, the jury may render a verdict upon principles of equity; that therefore he declined to charge that the destruction of the tenement or loss of the possession by any casualty not caused by the landlord or defects in his title, did not relieve the tenant from payment or rent during the continuance of the term for which he rented; neither

would he charge that such destruction or loss relieved the tenant from paying rent; but from all the evidence submitted, under said special rule, the jury might find a verdict upon principles of equity.

The jury found for plaintiff for $43 99 and costs. His counsel moved for a new trial, upon the grounds that the Court erred in overruling said demurrer and in said charge. The new trial was refused, and that is assigned as error.

Hammond & Welborn, for plaintiff in error, as to destruction of tenement cited, 3 Kent, 465-6-7; 2 Kelly, 124; Code, sec. 2267; 12 Ga., 12. As to Ordinance of 1865, 35th Ga., 26, 118; 36th, 552.

A. W. Hammond & Son, Arnold & Boyles, for defendant.

By the Court—BROWN, C. J., delivering the opinion.

The rent contract in this case was made on the 2d of May, 1864, for eight months, at $1,000 per month. The two first months rent were paid, and during the third month, the tenant was driven from the premises by the Federal army, and the house was afterwards burnt by the army. On the trial the plaintiff moved to strike the defendant's plea, which set out this as a defence, and excepted to the charge of the Court, because he refused to charge the jury that the tenant was bound for the rent during the whole period, without regard to the destruction of the house by the army. The Court did charge in substance, that notwithstanding this rule of law the Scaling Ordinance of 1865 was applicable to the case, *and that the jury might adjust the equities between the parties under that Ordinance. After the verdict, a new trial was moved for by plaintiff's counsel upon these grounds alone. There was no objection that the verdict was contrary to the evidence, or that it was without evidence.

On the hearing in this Court, it is urged that the Court erred in refusing to strike the plea, and in refusing to give in charge to the jury the provisions of Section 2267 of the Revised Code, without qualification. When it comes in conflict with no other provision of law, there is no question that the principle laid down in that section is a sound one: that the destruction of the tenement by fire, or the loss of possession by any casualty not caused by the landlord or from defect of his title, shall not abate the rent contracted to be paid. But in case of a rent contract made between June, 1861, and June, 1865, I see no reason why the Scaling Ordinance does not apply. It must be construed in connection with this section of the Code, and while the rent is not, as a general rule of law, to be abated by reason of the destruction of the tenement, the tenant, when sued upon the rent notes, may, under the Ordinance, in the class of cases to which it applies, give in evidence the consideration of the

Clark v. McCroskey

notes and the value thereof at any time. If the tenement, the rent of which was the consideration of the note, was destroyed by the Federal army, he may show the value of such tenement, after the destruction, as well as before it was destroyed; or in the language of the Ordinance, he may show its value at any time, and the jury may consider this in connection with the other evidence in the case, and may then adjust the equities between the parties, in accordance with the Ordinance above referred to.

I see no reason for making a contract for rent an exception to the general rule laid down in the Ordinance, which has been so often sustained by this Court, in almost every variety of contract made during the period of the war. And as there is no objection to the verdict of the jury on the motion for new trial on the ground that it was contrary to evidence, or without sufficient evidence to sustain it, I am of *opinion that the judgment of the Court below should be affirmed.

McCAY, J., concurred as follows:

I have never been able to understand the uniform decisions of this Court, in the enforcement of the Ordinance of 1865, if it be assumed that the object of the Ordinance is merely to open a wider door for the introduction of evidence, in order to arrive at the intent of the parties to Confederate contracts. Under such a construction, you might, indeed, prove that by the word dollar, the parties meant Confederate dollar. But if the contract be written, this is all of the intent you could prove. The other intent of the parties is to be deduced from the plain, unambiguous words of the writing.

If one promise in writing to pay, on a day certain, $1,000 in Confederate money, and there is proof that, on that day, Confederate money was of a particular value, there is no longer any doubt as to what the contract is. The consideration of the contract and its value, or the value of the currency at any other time, has nothing at all to do with the contract. And yet this Court has held, over and over again, that all these things are elements to be considered by the jury in making up their verdict, in finding, as the law directs, a verdict on principles of equity.

My view of the Ordinance of 1865, is this: It allows evidence to be given in, of the intent of the parties, as to what they meant by the word dollar. If this evidence shows that they meant Confederate dollar, then the Ordinance assumes, and rightly, that the contract is one that cannot be performed according to the intent of the parties. Confederate money was no specific, but a currency, and the parties as well as the law then in force, contemplates the performance and enforcement of the contract, in the very thing promised. This is now impossible. In such cases, the settled rule of law is, that the intent of the parties ceases to be the criterion for the determination of their rights; the intention is impos-

sible to be enforced. Nothing can, under such circumstances, be *done, but to impose upon the parties the rule, ex equo ex bona; do justice between them, not according to the contract, but according to the principles of equity.

This, the Ordinance of 1865 directs to be done, and points out, in a general way, the mode.

The currency, and its value at the time, and at any time, and the consideration, and its value at any time, and what the parties have agreed upon, are all to be considered, and the verdict is to be what, under all the circumstances, is right; and this Judge Pope told the jury to do. The contract, he told them, was to rent for eight months; and by the agreement, the defendant was bound to pay, whether the house was burnt or not; but he told them further, that this agreement was not, in this case, binding; no more than the other part of the agreement, to pay at the times fixed, in Confederate money. They were to consider the agreement, the consideration, the currency, and find a verdict, in view of all the facts.

There is no complainant of the verdict of the jury, and as I think the charge was right, I concur in the judgment of affirmance.

WARNER, J., dissenting.

This was an action brought by the plaintiff against the defendant on a rent contract, made on the 2d day of May, 1864, for the rent of a store and warehouse in the city of Atlanta, for the term of eight months. The defendant pleaded in his defence to the action, that he had been deprived of the possession of the premises, by reason of the occupation of Atlanta by the Federal army, and the destruction of the property rented, by fire. On the trial of the case, the plaintiff demurred to that portion of the defendant's plea, and moved the Court to strike it out, which motion the Court overruled, and he allowed the defendant to prove the facts set forth in that part of his plea. The plea and demurrer thereto, presented the naked question of law, whether the facts stated therein, constituted any legal defence to the plaintiff's action. The 2267th section of the Code, declares that, "the destruction of *a tenement by fire, or the loss of possession by any casualty, not caused by the landlord, or from defect in his title, shall not abate the rent contracted to be paid."

In my judgment, the defendant's plea did not constitute any legal defence to the plaintiff's action for rent, and the Court below erred in overruling the demurrer thereto, and allowing the defendant, on the trial, to prove the facts alleged in said plea. The defendant was bound in law to pay the rent stipulated in his contract, without any abatement on account of the casualties set forth in his plea. If the contract was a Confederate contract, then the Ordinance of

1865 applied to it, in the same manner as to other contracts, when payment was to be made in Confederate money; but the fact that the rent was to be paid in Confederate currency, did not alter or change the law as to the abatement of the rent, for any of the casualties mentioned in the defendant's plea, and the jury on the trial, ought not to have been allowed to take into consideration any of these casualties, in abatement of the rent contracted to be paid. The abatement of the rent agreed to be paid on account of the casualties specified in the plea, was one question: the scaling the amount of the rent note, payable in Confederate currency, under the Ordinance of 1865, was another and distinct question, and the error consists in this, that the Court below allowed that which was illegal to be mixed up with that which was legal, and to be submitted to the jury for their consideration.

In my opinion, the judgment of the Court below should be reversed, and a new trial should be granted.